MILLER v RADIKOPF

1. LOTTERIES—AWARDS VOLUNTARILY GIVEN.
   Receiving a lottery award voluntarily paid is not prohibited by state law.

2. LOTTERIES—POLICY AGAINST LOTTERIES.
   The general policy of the state against the holding of lotteries would be seriously compromised if lottery winners were allowed to successfully bring suit for their prizes (MCLA 750.372).

3. LOTTERIES—PRIZES VOLUNTARILY GIVEN—COURTS—POLICY AGAINST LOTTERIES—JUDICIAL PROCESS.
   A court will not interfere where a lottery prize is voluntarily given the winner, but public policy demands that courts not give support to the maintenance of lotteries in this state by allowing prize winners judicial process to collect their winnings.

4. LOTTERIES—ILLEGAL SCHEMES—BENEFICIARIES.
   Beneficiaries of illegal schemes, however innocent they themselves may be, should not be heard to complain that they did not receive their contemplated rewards.

5. LOTTERIES—STATE LOTTERY—PUBLIC POLICY—STATUTES.
   The state lottery established by the McCauley-Traxler-Law-Bowman Lottery Act is the only legal lottery conducted in the state, and the maintenance of other lotteries is contrary to statute and public policy (MCLA 432.37).

Appeal from Ottawa, Raymond L. Smith, J. Submitted Division 3 December 4, 1973, at Grand Rapids. (Docket No. 15671.) Decided January 21, 1974. Leave to appeal granted, 392 Mich —.

Complaint by Lewis S. Miller against Ronald J.

REFERENCES FOR POINTS IN HEADNOTES
[1–3, 5] 38 Am Jur 2d, Gambling §§ 58–61.
[4] 38 Am Jur 2d, Gambling §§ 216–218.

Radikopf for an accounting of certain monies claimed owing and for a constructive trust to be impressed upon that amount. Summary judgment for defendant. Plaintiff appeals. Affirmed.

*McCroskey, Libner, Van Leuven, Kortering, Cochrane & Brock, P. C.,* for plaintiff.

*Scholten & Fant* (by *R. Neal Stanton),* for plaintiff.

Before: T. M. Burns, P. J., and Holbrook and McGregor, JJ.

Per Curiam. Plaintiff filed suit asking that the defendant account for certain monies claimed owing to plaintiff and that a constructive trust in favor of plaintiff be impressed upon that amount. On November 13, 1972, the trial court granted the defendant's motion for summary judgment on the basis that no cause of action was stated, and more specifically that the agreement by which the money was claimed owing to plaintiff was illegal and unenforceable. Plaintiff appeals of right.

The complaint alleges that plaintiff and defendant sold tickets to the Irish Sweepstakes under an arrangement by which they would receive two free tickets for every 20 they sold. Plaintiff and defendant agreed that each would put his own name on one ticket, but that if either ticket won, they would share in the prize equally. On or about June 28, 1972, a ticket bearing the name of defendant was drawn as the super prize winner, entitling him to a prize estimated at $487,000. Contrary to and despite the agreement defendant refused to share the winnings with plaintiff. This suit was then instituted.

Plaintiff first contends that the possession of a

lottery ticket and the winning of a lottery prize is not in itself illegal and therefore contrary to public policy. It is true that receiving a lottery award voluntarily paid, is not prohibited. *People v Watson,* 75 Mich 582; 42 NW 1005 (1889). The general policy of this state against the holding of lotteries, MCLA 750.372 *et seq.;* MSA 28.604 *et seq.,* would be seriously compromised, however, if lottery winners were allowed to successfully bring suit for their prizes. Although the Court will not interfere where a lottery prize is voluntarily given the winner, public policy demands that courts not give support to the maintenance of lotteries in this state by allowing prize winners judicial process to collect their winnings. Beneficiaries of illegal schemes, however innocent they themselves may be, should not be heard to complain that they did not receive their contemplated rewards. *See Rigo v DeGutis,* 341 Mich 126; 67 NW2d 224 (1954).

Plaintiff next contends that the 1970 constitutional amendment, Const 1963, art 4, § 41, and the McCauley-Traxler-Law-Bowman Lottery Act, 1972 PA 239, MCLA 432.1 *et seq.;* MSA 18.969(1) *et seq.,* establishing a state run lottery in Michigan under that amendment, evinces a public policy in favor of the allowance of lotteries. Section 37 of that act, MCLA 432.37; MSA 18.969(37), however, specifically exempts the lottery established under that act from the application of other laws concerning lotteries. This specific exemption implies that other lotteries are to remain prohibited by those statutes. This is especially true since the state lottery has as its purpose the raising of revenue for the state, and it would seem incongruous that the Legislature would allow private lotteries to compete with the public lottery and thereby reduce the revenues earned for the state. We there-

fore hold that the state lottery established by the McCauley-Traxler-Law-Bowman Lottery Act is the only legal lottery conducted in this state, and that the maintenance of other lotteries is contrary to statute and public policy.

Affirmed.