*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re RAYMOND E. VANDAMME
IRREVOCABLE TRUST 10/22/13.

KEITH FOWLER and MARK FOWLER,

        Petitioners,

and

YVONNE M. ZISLER, Personal Representative of
the ESTATE OF DENNIS FOWLER,

        Appellant,

v

JANET L. CZAJKOWSKI and KENNETH R.
VANDAMME,

        Appellees,

and

MITCHELL VANDAMME, ALANNA
VANDAMME, and ERIAN R. SOLAIMAN,

        Other Parties.

UNPUBLISHED
May 13, 2021

No. 351517
Macomb Probate Court
LC No. 2018-226851-TV

Before: MARKEY, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Appellant, Yvonne M. Zisler, as personal representative of the estate of Dennis Fowler, appeals as of right the probate court's opinion and order granting in part and denying in part a motion for sanctions and costs. We conclude that the probate court erred in awarding attorney fees

-1-

and deposition costs, but properly awarded other costs. We therefore affirm in part, reverse in part, and remand for entry of an order in conformance with this opinion.

## I. BACKGROUND

This matter concerns an award of attorney fees and costs after a jury trial regarding the validity of a trust. Because the matter involves various family members, we will use first names in this opinion to avoid confusion.

Raymond E. VanDamme, the decedent, was the settlor of two trusts: a September 20, 2000 revocable living trust, and an October 23, 2013 irrevocable trust. Raymond died around Christmas in 2016. Raymond had three children: Teresa Fowler, Kenneth VanDamme, and Janet Czajkowski. Teresa was married to Dennis Fowler, and had two sons, Keith Fowler and Mark Fowler. Teresa died on December 20, 2010, six years before Raymond's death.

After Raymond's death, Keith and Mark filed a petition to contest his two trusts. Regarding the October 23, 2013 irrevocable trust, Keith and Mark alleged it should be set aside because: (1) Raymond lacked the required mental capacity to create a trust; (2) Raymond was unduly influenced by appellees; and (3) the trust was the result of fraudulent behavior. The petition also sought an accounting of the trust assets and distributions, and removal of appellees as trustees. After filing the initial petition, Mark and Dennis learned the September 20, 2000 revocable living trust had been amended on January 11, 2011, approximately three weeks after Teresa died, and that Raymond had replaced Teresa with Dennis as a trust beneficiary in the amendment. The probate court ordered an amendment to the case caption to refer only to the October 23, 2013 irrevocable trust, granted Dennis leave to intervene, and allowed a separate petition to be filed regarding the September 20, 2000 revocable living trust, as amended on January 11, 2011.

Dennis, Keith, and Mark filed an amended petition regarding the October 23, 2013 irrevocable trust, as well as petitions regarding the September 20, 2000 revocable living trust and decedent's estate. The probate court ordered consolidation of the three cases and appointed Martin J. Brosnan as a special fiduciary. At the direction of the probate court, Brosnan was responsible for investigating Raymond's assets and determining whether the estate had a claim for the return of funds. Brosnan released a report detailing Raymond's assets, and indicated that he "saw no unusual activity regarding the use or disposition" of Raymond's assets except for a transaction related to the irrevocable trust. Brosnan explained:

> Mr. Van Damme was a widower with three children. At the beginning of 2010, his estate plan consisted of a trust which provided for equal distribution among his children and an annuity beneficiary designation for each child with three distinct annuities. Mr. Van Damme's daughter died in 2010. Her widowed husband replaced her as the presumptive beneficiary of 1/3 of Mr. Van Damme's estate.

> In 2013, Mr. Van Damme, with the aid and assistance of counsel, effectively changed his estate plan by creating an irrevocable trust. Essentially[,] all of Mr. Van Damme's assets were removed to this trust. The trust changed the disposition scheme of the estate by providing that Mr. Van Damme's two surviving children

-2-

[Kenneth and Janet] would receive 48% shares each with 1% each to two grandchildren [Keith and Mark]. His widowed son-in-law [Dennis] would take nothing.

The probate court scheduled a jury trial to begin on April 30, 2019. Before trial, the parties filed competing motions for summary disposition. Appellees asserted that summary disposition was proper: (1) under the doctrine of election because Mark and Keith accepted the benefits of the irrevocable trust and, without returning the funds received, claimed it was invalid; and (2) the allegations of mental incapacity, undue influence, and fraud were conclusory, speculative, and contradicted by the evidence. The probate court granted in part, and denied in part, appellees' motion for summary disposition, concluding that Keith and Mark were "estopped from challenging the trust under the doctrine of election," but finding that genuine issues of material fact existed regarding the validity of the October 23, 2013 irrevocable trust. The probate court denied the motion for summary disposition filed by Dennis, Keith, and Mark. Before its decision on the dispositive motions, the probate court entered an order discharging Brosnan as special fiduciary, granting his request for fees totaling $3,804.50, and dividing payment of the fee equally between Janet, Kenneth, Dennis, Keith, and Mark.

During the jury trial, appellees moved for a directed verdict at the close of petitioners' case. The probate court denied the motion, concluding that sufficient evidence existed to submit the case to the jury. At the close of the trial, the jury found in favor of appellees. That same day, based on the jury's findings, the probate court entered an order denying the amended petition in Case No. 2018-226851-TV. The order stated: "This Order *does* close the file." On May 13, 2019, the probate court amended the order to read, "This Order *does not* close the file." On May 22, 2019, the probate court, consistent with its earlier verbal ruling, entered an order denying appellees' motion for directed verdict in Case No. 2018-226851-TV.

Relying on MCR 1.109, MCR 2.626, and MCL 600.2591, appellees moved for sanctions and costs against Dennis. Appellees asserted that Dennis failed to produce evidence demonstrating that Raymond was mentally incapable of creating the October 22, 2013 trust, and that Dennis could not establish any undue influence or fraud. Appellees pointed to Dennis's testimony that he had no personal knowledge or evidence of undue influence, and that he lacked evidence regarding fraud. Appellees also argued that Dennis and his attorneys contested "the most basic facts" and litigated "every legal point . . . to conclusion," regardless of whether the positions were supported by fact or law. On these grounds, appellees asserted that the probate court should award them attorney fees and costs.

The same day they moved for sanctions and costs, appellees filed a taxation of costs form outlining the various costs they sought, including: (1) $40 related to motions resulting in dismissal or judgment; (2) $218.70 related to service fees and mileage; (3) $2,276.35 related to the cost of taking depositions; (4) $659.58 related to witness fees; and (5) $1,520.80 related to the special-fiduciary fees for Brosnan. In total, respondents sought $4,715.43 in costs.

After Dennis objected to the taxation of costs form and responded to the motion for sanctions, the probate court held a hearing on appellees' motion. Subsequently, the probate court entered the opinion and order at issue on appeal. The probate court first concluded that Dennis, Keith, and Mark "clearly had a reasonable basis to believe the facts underlying their claims were

true and their claims were not devoid of legal merit." To support its conclusion, the probate court pointed to the competing motions for summary disposition that it had denied, as well as the unsuccessful motion for directed verdict by appellees at the close of proofs. As a result, the probate court concluded that Dennis's actions "in pursuing this matter were not frivolous."

Notwithstanding its conclusion that the claims were not frivolous, the probate court noted that appellees "did prevail in their defense of" Dennis's claims. Moreover, the probate court noted that because appellees sought "costs and fees as part of the judgment to be signed by the Court," "the time limit of MCR 2.625(F)(2) does not apply." The probate court concluded that appellees were entitled to recover various costs, including fees for deposition transcripts, because appellees "established the depositions were necessarily used per MCL 600.2549." Further, the probate court ordered Dennis to pay Brosnan's special-fiduciary fees in full.

The probate court also granted appellees an award of $78,010 in attorney fees. After listing the various factors to be considered when determining attorney fees, the probate court concluded that appellees had failed to offer evidence regarding the reasonableness of the hourly rates sought for the work performed, related to both attorney services and legal-assistant services. As a result, the probate court reduced the hourly rates claimed by appellees.

Dennis moved for reconsideration, but the probate court denied the motion. This appeal followed. During the pendency of this appeal, Dennis passed away, and his estate was substituted as appellant.

## II. ANALYSIS

### A. ATTORNEY FEES

On appeal, appellant first argues that the probate court erroneously awarded attorney fees to appellees because the award was not authorized by statute or court rule.

### 1. STANDARD OF REVIEW

To preserve a challenge to a trial court's determination of attorney fees, a party must have asserted before that court the legal grounds on which it seeks this Court's review. *Ladd v Motor City Plastics Co*, 303 Mich App 83, 104; 842 NW2d 388 (2013). Petitioners argued before the probate court that MCL 600.2591, which is incorporated by MCR 2.625(A)(2), only applied to civil actions and not a probate-court proceeding. Petitioners also argued that their claims were not frivolous and, therefore, there was no basis under the statute or court rules for an award of fees. Accordingly, the challenge is preserved for appeal.

We review a trial court's decision to award attorney fees for an abuse of discretion. *Windemere Commons I Ass'n v O'Brien*, 269 Mich App 681, 682; 713 NW2d 814 (2006). An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes. *Berger v Berger*, 277 Mich App 700, 723; 747 NW2d 336 (2008). "An error of law necessarily constitutes an abuse of discretion." *Denton v Dep't of Treasury*, 317 Mich App 303, 314; 894 NW2d 694 (2016). "The construction and interpretation of court rules present a question of law that this Court reviews de novo." *Wolfenbarger v Wright*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 350668); slip op at 13 (cleaned up). "We use the same

rules of interpretation to interpret statutes and court rules." *Lech v Huntmore Estates Condo Ass'n (On Remand)*, 315 Mich App 288, 290; 890 NW2d 378 (2016).

## 2. ANALYSIS

Regarding the payment of attorney fees and costs, our Supreme Court has stated:

Michigan follows the "American rule" with respect to the payment of attorney fees and costs. Under the American rule, attorney fees generally are not recoverable from the losing party as costs in the absence of an exception set forth in a statute or court rule expressly authorizing such an award. The American rule is codified at MCL 600.2405(6), which provides that among the items that may be taxed and awarded as costs are any attorney fees authorized by statute or by court rule. [*Haliw v Sterling Heights*, 471 Mich 700, 706-707; 691 NW2d 753 (2005) (cleaned up).]

In their motion for sanctions, appellees sought attorney fees and costs under MCR 1.109, 2.625, and MCL 600.2591. In relevant part, MCR 1.109(E) states:

(6) Sanctions for Violation. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

(7) Sanctions for Frivolous Claims and Defenses. In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). The court may not assess punitive damages.

Further, MCR 2.625 states, in relevant part:

(A) Right to Costs.

(1) In General. Costs will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action.

(2) Frivolous Claims and Defenses. In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591. [MCR 2.625(A)(1), (2).]

MCL 600.2591 states:

(1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

(2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

(3) As used in this section:

(a) "Frivolous" means that at least 1 of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

(b) "Prevailing party" means a party who wins on the entire record.

In addressing the motion for sanctions, the probate court first concluded that Dennis, Keith, and Mark "clearly had a reasonable basis to believe the facts underlying their claims were true and their claims were not devoid of legal merit." To support its conclusion, the probate court pointed to the competing motions for summary disposition that it had denied, as well as the unsuccessful motion for directed verdict by appellees at the close of proofs by Dennis. As a result, the probate court concluded that the actions of Dennis, Keith, and Mark "in pursuing this matter were not frivolous." Our review of the record confirms that the probate court did not abuse its discretion in concluding that petitioners' claims were not frivolous.

Nonetheless, the probate court further concluded that, even though the claims were not frivolous, appellees "did prevail in their defense of" the claims made by Dennis, Keith, and Mark. Thus, it appears that the probate court awarded attorney fees to appellees solely on the basis that they were prevailing parties. In doing so, the probate court did not refer to any statute or court rule apart from the ones relied upon by appellants in their motion.

Given the probate court's conclusion that petitioners' actions "in pursuing this matter were not frivolous," the probate court's award of attorney fees could not have been made under MCL 600.2591. See *Keinz v Keinz*, 290 Mich App 137, 141; 799 NW2d 576 (2010). Nor could the award of attorney fees have been granted under MCR 2.625(A). This rule entitles a prevailing party to *costs*, and MCR 2.625(A)(2) entitles a party to costs as provided in MCL 600.2591. But MCR 2.625(A)(1) does not provide that a prevailing party is entitled to *attorney fees*, and, as noted, attorney fees under MCL 600.2591 are not warranted unless the court finds that an action or defense was frivolous. "[T]he term 'costs' ordinarily does not encompass attorney fees unless the statute or court rule specifically defines 'costs' as including attorney fees." *Dessart v Burak*, 470 Mich 37, 42; 678 NW2d 615 (2004). By providing for "costs," but not defining that to include attorney fees, MCR 2.625(A)(1) does not authorize an award of attorney fees. And, as discussed, although MCR 2.625(A)(2) references MCL 600.2591, which allows attorney fees to the prevailing party upon a finding frivolousness, the probate court specifically found that petitioners' claims were *not* frivolous. Thus, the probate court's award of attorney fees was not authorized under MCR 2.625. Additionally, given MCR 1.109(E)(7)'s incorporation of MCR 2.625(A)(2),

which, in turn, references MCL 600.2591, MCR 1.109 did not authorize the attorney fees awarded here.

Therefore, none of the bases upon which appellees relied in requesting attorney fees authorized such an award here. Appellees point out that the probate court did not state the legal basis on which it awarded attorney fees to them, and, given this omission, they ask that we remand the matter to the probate court for an explanation of its award. We decline to remand for such an explanation, however, because appellants expressly sought attorney fees under MCR 1.109, MCR 2.625, and MCL 600.2591, and, as explained, neither the statute nor the court rules provide a basis on which the probate court could have relied to award attorney fees. Thus, the probate court erred as a matter of law and abused its discretion in awarding attorney fees in this case.

## B. COSTS

Appellant also challenges various aspects of the probate court's award of costs. The objections were raised below and preserved for appellate review.

Appellant first argues that the probate court erroneously awarded taxable costs because appellees failed to timely file a bill of costs and, therefore, their request was time-barred. MCR 2.625(A)(1) states that "[c]osts will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action." The power to tax costs, however, "is purely statutory, and the prevailing party cannot recover such expenses absent statutory authority." *Van Elslander v Thomas Sebold & Assoc, Inc*, 297 Mich App 204, 216; 823 NW2d 843 (2012) (citation omitted). The starting presumption in all civil cases is that:

> "[C]osts shall be allowed as a matter of course to the prevailing party. This does not mean, of course, that every expense incurred by the prevailing party in connection with the proceeding may be recovered against the opposing party. The term 'costs' as used [in] MCR 2.625(A) takes its content from the statutory provisions defining what items are taxable as costs." [*Guerrero v Smith*, 280 Mich 647, 671; 761 NW2d 647 (2008) (citations omitted).]

MCR 2.625(F), the court rule regarding the procedures for taxing costs, states:

> (F) Procedure for Taxing Costs at the Time of Judgment.
>
> (1) Costs may be taxed by the court on signing the judgment, or may be taxed by the clerk as provided in this subrule.
>
> (2) When costs are to be taxed by the clerk, the party entitled to costs must present to the clerk, within 28 days after the judgment is signed, or within 28 days after entry of an order denying a motion for new trial, a motion to set aside the judgment, a motion for rehearing or reconsideration, or a motion for other postjudgment relief except a motion under MCR 2.612(C),
>
> (a) a bill of costs conforming to subrule (G),

(b) a copy of the bill of costs for each other party, and

(c) a list of the names and addresses of the attorneys for each party or of parties not represented by attorneys.

In addition, the party presenting the bill of costs shall immediately serve a copy of the bill and any accompanying affidavits on the other parties. Failure to present a bill of costs within the time prescribed constitutes a waiver of the right to costs.

(3) Within 14 days after service of the bill of costs, another party may file objections to it, accompanied by affidavits if appropriate. After the time for filing objections, the clerk must promptly examine the bill and any objections or affidavits submitted and allow only those items that appear to be correct, striking all charges for services that in the clerk's judgment were not necessary. The clerk shall notify the parties in the manner provided in MCR 2.107.

(4) The action of the clerk is reviewable by the court on motion of any affected party filed within 7 days from the date that notice of the taxing of costs was sent, but on review only those affidavits or objections that were presented to the clerk may be considered by the court.

In this case, appellees presented their bill of costs on June 10, 2019. The question on appeal is which probate-court order constitutes the final order for purposes of taxing costs and determining whether appellees timely filed their bill of costs. Appellant asserts that appellees' bill of costs was untimely because the probate court's order dated May 6, 2019 constitutes the final order. In contrast, appellees argue that either the order granting their motion for sanctions and costs or the May 22, 2019 order denying the motion for directed verdict constitutes the final order for purpose of the timely filing of the bill of costs.

MCR 5.801(A) defines what constitutes a final order in a probate-court proceeding. The rule states, in relevant part:

(A) Appeal of Right. A party or an interested person aggrieved by a final order of the probate court may appeal as a matter of right as provided by this rule.

Orders appealable of right to the Court of Appeals are defined as and limited to the following:

(1) a final order, as defined in MCR 7.202(6)(a),[1] affecting the rights or interests of a party to a civil action commenced in the probate court under MCR 5.101(C);

---

[1] MCR 7.202(6)(a) provides the standard definitions of a "final order" in a civil case, and states:

(2) a final order affecting the rights or interests of an interested person in a proceeding involving a decedent estate, the estate of a person who has disappeared or is missing, a conservatorship or other protective proceeding, the estate of an individual with developmental disabilities, or an inter vivos trust or a trust created under a will. These are defined as and limited to orders resolving the following matters:

* * *

(c) determining the validity of a governing instrument as defined in MCL 700.1104(m)[.]  [MCR 5.801(A) (footnote added).]

To the extent that costs were taxed by the clerk, appellees' bill of costs was timely filed. Appellant asserts that the May 6, 2019 order constitutes the final order in this case. But that order, as appellees point out, did not dispose of all the claims and did not adjudicate the rights and liabilities of all the parties, MCR 7.202(6)(a)(i), and did not determine the validity of the trust, MCR 5.801(A)(1)(c). As appellees argue, the validity of the trust was not determined until the jury rendered its verdict *and* the probate court entered the order denying the motion for a directed verdict. See *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009) ("[A] court speaks through its written orders and judgments, not through its oral pronouncements."). This did not occur until the probate court entered its order denying the motion for a directed verdict on May 22, 2019. Under MCR 2.625(F)(2), a party has 28 days from the day the judgment is signed to file a bill of costs. Appellees filed their bill of costs on June 10, 2019, which was within the 28-day period.

---

(6) "final judgment" or "final order" means:

(a) In a civil case,

(i) the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties, including such an order entered after reversal of an earlier final judgment or order;

(ii) an order designated as final under MCR 2.604(B);

(iii) in a domestic relations action, a postjudgment order that, as to a minor, grants or denies a motion to change legal custody, physical custody, or domicile,

(iv) a postjudgment order awarding or denying attorney fees and costs under MCR 2.403, 2.405, 2.625 or other law or court rule,

(v) an order denying governmental immunity to a governmental party, including a governmental agency, official, or employee under MCR 2.116(C)(7) or an order denying a motion for summary disposition under MCR 2.116(C)(10) based on a claim of governmental immunity[.]

-9-

Moreover, the probate court's September 23, 2019 opinion and order constituted a final judgment because it resolved the last pending claim and closed the case. In its opinion and order, the probate court concluded that appellees sought costs and fees as part of the judgment, consistent with MCR 2.625(F)(1). In *Doe v Boyle*, 312 Mich App 333, 349-350; 877 NW2d 918 (2015), this Court concluded that, because the guardian ad litem filed his motion for fees and costs before the final judgment entered, the circuit court abused its discretion in finding that the guardian ad litem "took too long to file his motion for fees and costs." This Court concluded that the guardian ad litem's motion for fees and costs filed before the final judgment was entered was timely. *Id*.

In this case, appellees filed their motion for sanctions and costs on June 10, 2019, approximately two-and-a-half months before the final order was entered on September 23, 2019. Although appellant argues that appellees filed their bill of costs separately and did not address the request for costs in their motion for sanctions, thereby demonstrating their intent to have it considered by the court clerk and triggering the 14-day deadline allowing objections, appellant is incorrect. Appellees attached the bill of costs as exhibit 10 to their motion for sanctions, and the amount referenced in the bill of costs, $4,715.43, is the same amount requested in the relief-requested section of the motion for sanctions. Therefore, appellees' motion for sanctions and costs was timely.

Next, appellant argues the probate court erroneously awarded appellees taxable costs for deposition transcripts. Appellees concede that costs for a deposition may not be charged unless the deposition is filed with the court clerk.

MCL 600.2549 allows the taxation of deposition fees:

> Reasonable and actual fees paid for depositions of witnesses filed in any clerk's office and for the certified copies of documents or papers recorded or filed in any public office shall be allowed in the taxation of costs only if, at the trial or when damages were assessed, the depositions were read in evidence, except for impeachment purposes, or the documents or papers were necessarily used.

"To tax costs for the taking of a deposition, the deposition must be (1) filed with any clerk's office, and (2) read into evidence at trial or when damages were assessed." *Vanalstine v Land O'Lakes Purina Feeds, LLC*, 326 Mich App 641, 655; 929 NW2d 789 (2018).

In *Portelli v IR Const Prod Co, Inc*, 218 Mich App 591, 605; 554 NW2d 591 (1996), this Court addressed whether the taxing of costs for taking depositions was appropriate under MCL 600.2549 when the case was decided at the summary disposition phase, rather than at trial. In *Portelli*, this Court stated:

> Costs for depositions are expressly taxable pursuant to MCL 600.2549; MSA 27A.2549. The plain language of the statute states that such costs are recoverable where the deposition is "read in evidence" at trial or where it is "necessarily used." MCL 600.2549; MSA 27A.2549. Here, excerpts of the deposition transcripts . . . were necessarily used in the context of [the] motion for summary disposition. [*Portelli*, 218 Mich App at 605.]

Thus, it appears *Portelli* held that if a deposition transcript is relied on to support a motion for summary disposition, those transcripts are "necessarily used," and therefore, costs associated with those depositions are taxable as long as the other requirements of MCL 600.2549 are satisfied. The *Portelli* Court ultimately held, however, that the deposition costs at issue were not taxable because the deposition transcripts were never filed in any clerk's office. As a result, this Court's holding that transcripts used to support a motion for summary disposition fulfill the "necessarily used" requirement of MCL 600.2549 is obiter dictum that need not be followed. See *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 437; 751 NW2d 8 (2008).

The probate court improperly applied the "necessarily used" language of MCL 600.2549 to award tax costs for the deposition transcripts. The "necessarily used" language of MCL 600.2549 applies only to "documents and papers," not deposition transcripts. To the extent that the probate court relied on the "necessarily used" language in MCL 600.2549 in taxing costs for deposition transcripts, that reliance was erroneous. And, in any event, the probate court abused its discretion in awarding costs for the taking of depositions because the deposition transcripts were not read into evidence at trial and were not separately filed with the clerk's office.

Finally, appellant argues the probate court erroneously awarded taxable costs to appellees for special-fiduciary fees stemming from Brosnan's work investigating Raymond's assets because there was no statutory basis for allowing taxation of those costs.

MCL 700.1309(a) provided the probate court the discretion to appoint a special fiduciary. The statute states that, "[u]pon reliable information received from an interested person, county or state official, or other informed source, including the court's files, the court may enter an order in a proceeding to . . . [a]ppoint a special fiduciary to perform specified duties." MCR 5.204 additionally states:

> (A) The court may appoint a special fiduciary or enjoin a person subject to the court's jurisdiction under MCL 700.1309 on its own initiative, on the notice it directs, or without notice in its discretion.
>
> (B) The special fiduciary has all the duties and powers specified in the order of the court appointing the special fiduciary. Appointment of a special fiduciary suspends the powers of the general fiduciary unless the order of appointment provides otherwise. The appointment may be for a specified time and the special fiduciary is an interested person for all purposes in the proceeding until the appointment terminates.

The probate court also has jurisdiction "to settle the accounts of a fiduciary" and to determine a party's "liability for the fiduciary's expenses." *In re Shields Estate*, 254 Mich App 367, 369; 656 NW2d 853 (2002).

The probate court was authorized to award special-fiduciary fees for the services provided by Brosnan. MCL 700.1309 and MCR 5.204 demonstrate that it is within a probate court's discretion whether to appoint a special fiduciary. Thus, questions regarding a special fiduciary's compensation, a necessary part of his appointment, would logically be subject to the probate court's discretion. Because a probate court has jurisdiction to settle a fiduciary's accounts and

determine a party's "liability for the fiduciary's expenses," *In re Shields Estate*, 254 Mich App at 369, it was not outside the range of principled outcomes for the probate court to order the special-fiduciary fees be paid by Dennis.

## III. CONCLUSION

We conclude that the probate court erred in awarding attorney fees and deposition costs, but properly awarded other costs. Affirmed in part, reversed in part, and remanded for entry of an order in conformance with this opinion. We do not retain jurisdiction. Neither party having prevailed in full, no costs may be taxes under MCR 7.219(F).

/s/ Jane E. Markey
/s/ Michael J. Kelly
/s/ Brock A. Swartzle